UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Terry Chi, | Case No. 2:24‑cv‑02014‑CDS‑BNW |
| Plaintiff | **Order Granting Defendant SNPT's Joinder, Granting in Part and Denying in Part Defendants CCSD, Mazur, Cole, Jara, and Larsen‑Mitchell's Motion to Dismiss, and Denying as Moot SNPT's Motion to Dismiss** |
| v. | |
| Clark County School District, et al., | |
| Defendants | [ECF Nos. 22, 23, 24] |

Plaintiff Terry Chi brings this case against defendants Clark County School District (CCSD), Mary Mazur, Cedric Cole, Jesus Jara, Brenda Larsen‑Mitchell, and Southern Nevada Public Television (SNPT), raising sixteen claims. These claims include:

(1)    Race discrimination in violation of 42 U.S.C. § 2000e2(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e‑17 (against CCSD);

(2)    Sex discrimination in violation of 42 U.S.C. § 2000e2(a) (against CCSD);

(3)    Retaliation due to protected activity in opposition to discrimination in violation of 42 U.S.C. § 2000e‑3(a) (against CCSD);

(4)    Disability discrimination, in violation of 42 U.S.C. § 12112(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (against CCSD);

(5)    Unlawful employment discrimination in violation of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. §§ 701 et seq. (against CCSD);

(6)    Age discrimination in violation of 29 U.S.C. § 623(a)(1) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (against CCSD);

(7)    Employment discrimination in violation of Nev. Rev. Stat. § 613.330(1) (against CCSD)[1];

---

[1] Co‑extensive with Chi's claims under Title VII, the ADA, and the ADEA (Claims 1, 2, 4, and 6). *See* ECF No. 40 at 6.

1      (8)    Retaliation in violation of Nev. Rev. Stat. § 613.340(1) (against CCSD)[2];

2      (9)    Civil rights violations under 42 U.S.C. § 1981: race-based discrimination (against

3              CCSD and Mazur in her official capacity);

4      (10)   Civil rights violations under 42 U.S.C. § 1981: race-based retaliation (against CCSD

5              and Mazur in her official capacity);

6      (11)   Civil rights violations under 42 U.S.C. § 1983: denial of protected liberty interest

7              (against Mazur and Cole in their individual and official capacities, and against Jara

8              and Larsen-Mitchell in their official capacities);

9      (12)   Civil rights violations under 42 U.S.C. § 1983: interference with first amendment

10            rights (against Mazur and Cole in their individual and official capacities, and against

11            Jara and Larsen-Mitchell in their official capacities);

12      (13)   Civil rights violations under 42 U.S.C. § 1985: unlawful conspiracy to deny civil rights

13            (against CCSD and SNPT, against Mazur and Cole in their individual and official

14            capacities, and against Jara and Larsen-Mitchell in their official capacities (all

15            defendants));

16      (14)   Intentional infliction of emotional distress (IIED) (against CCSD and Mazur);

17      (15)   Negligent hiring of Mazur (against CCSD);

18      (16)   Mandatory injunction for reinstatement (against CCSD).

19 Compl., ECF No. 1 at ¶¶ 165–267. Defendants CCSD, Mazur, Cole, Jara, and Larsen-Mitchell

20 ("CCSD defendants") moved to dismiss the complaint. Mot., ECF No. 22.[3] Defendant SNPT

21 joined this motion. ECF No. 23. SNPT also filed its own motion to dismiss. Mot., ECF No. 24.[4]

22 For the following reasons, SNPT's joinder is granted, the CCSD defendants' motion is granted in

23 part and denied in part, and SNPT's motion to dismiss is denied as moot.

24

25 ――――――――――――――――――

26 [2] Co-extensive with Chi's claim under 42 U.S.C. § 2000e-3(a) (Claim 3). *See* ECF No. 40 at 6.
[3] This motion is fully briefed. *See* Opp'n, ECF No. 40; Reply, ECF No. 42.
[4] This motion is fully briefed. *See* Opp'n, ECF No. 39; Reply, ECF No. 41.

I.    **Background**[5]

The factual background of this case is extensive, covering multiple years Chi spent working for Vegas PBS. Chi is a Chinese American woman over the age of forty. ECF No. 1 at ¶¶ 4, 29–31. She has also been diagnosed as having vertigo, heart palpitations, and severe high blood pressure, though the complaint fails to allege when she was diagnosed with these conditions. *Id.* at ¶ 32.

Chi began working at Vegas PBS, which is a department in CCSD, as a Director III, Digital Marketing on February 14, 2022. *Id.* at ¶¶ 28, 33. She reported directly to Mazur, who was the general manager and president of Vegas PBS. *Id.* at ¶ 34. She alleges that from the start of her employment, she was paid less than her non-Asian peers.[6] *Id.* at ¶ 35. On April 29, 2022, Chi was "made responsible for the membership department in addition to marketing. This meant that Ms. Chi's oversight responsibilities grew to a department of ten and her workload doubled. Clark County School District gave Ms. Chi no additional compensation for this despite Ms. Chi's expanded work duties." *Id.* at ¶ 36. Chi alleges that, after Chi presented to the Board of Directors of the SNPT on May 20, 2022, Mazur spoke to a board member, saying: "Chi's presentation to the Board was 'great,' but, referring to the fact that Ms. Chi was non-white, Defendant Mazur added that Ms. Walker said, 'She wouldn't want to meet' Ms. Chi 'in a back alley.'" *Id.* at ¶ 37. Chi alleges that after this incident, Chi explained to Mazur "why she considered that statement to be racist." *Id.*

On October 27, 2022, Mazur announced the promotion "of a white/Caucasian female Niki Bates to the position of Director IV, to oversee 'Corporate Marketing.'" *Id.* at ¶ 38. Chi states that Bates's "qualifications and experience were inferior to that of Ms. Chi in that Ms. Bates lacked the experience and qualifications to oversee corporate donations and had not performed

---

[5] Unless otherwise noted, the court only cites to Chi's complaint (ECF No. 1) to provide context to this action, not to indicate a finding of fact.

[6] Chi alleges that she learned this information later "because she was declared to be ineligible for a recent step increase in the salary structure at Ms. Chi's employer." ECF No. 1 at ¶ 35.

1  such job duties prior to her promotion." *Id.* Chi does not establish her own qualifications in
2  corporate donation oversight or the other duties of the position. *See id.* Chi alleges that on
3  November 5, 2022, she requested a promotion and a raise from Mazur "in light of the prior
4  increase in Ms. Chi's departmental responsibilities and scope of job duties, and in light of the
5  promotion of the less-qualified but white/Caucasian Ms. Bates . . . ." *Id.* at ¶ 39. Mazur allegedly
6  did not respond immediately. *Id.*

7      Five days later, on November 10, 2022, Mazur claimed that she received "an anonymous
8  complaint" about Chi "being a bully and creating a hostile work environment." *Id.* at ¶ 40. When
9  Chi asked for the source, Mazur allegedly told Chi "Don't worry about it" and that Chi "was 'just
10 collateral damage' in Defendant Mazur's decision to promote the less-qualified but
11 white/Caucasian Ms. Bates." *Id.* "When Ms. Chi asked Defendant Mazur if there was an
12 opportunity for her, Ms. Chi, to be promoted and properly compensated, Defendant Mazur
13 stated, 'Not at this time. In fact, I don't see a future for you here.'" *Id.* at ¶ 41. Chi alleges that this
14 anonymous complaint was later used "as the bases of disciplinary action . . . ."[7] *Id.* at ¶ 42.

15     On November 23, 2022, when Chi was attending a "Rotary Lunch" as an invited guest,
16 Bates, who was also in attendance "pointedly told Ms. Chi that there are 'no seats for you[.]'" *Id.*
17 at ¶ 43. When told about this interaction on December 2, 2022, Mazur "was dismissive" and
18 stated, "That's just Niki being Niki." *Id.* at ¶ 44.

19     On December 7, 2022, Chi complained to Mazur about Diane Carlson and the consulting
20 company Catapult, a CCSD vendor. *Id.* at ¶ 45. Specifically, she "was concerned about the
21 irritated and negative tone that Ms. Carlson had used with Ms. Chi and a member of Ms. Chi's
22 team" and Chi was concerned "about the high monthly cost of this vendor in relation to the
23 work output, and the amount of re-work necessary on the work" from Carlson and Catapult. *Id.*
24 Mazur "did nothing to address these problems with Catapult and the white/Caucasian Ms.
25 Carlson" and Chi alleges that Mazur and Carlson are personal friends. *Id.*

26

---

[7] Chi does not specify when this anonymous complaint was raised again by Mazur or others.

On January 25, 2023, Chi "requested a meeting with Defendant Mazur and Ms. Bates in order to address Ms. Bates's bullying behavior toward Ms. Chi. Later that day, at 3:30 p.m., Defendant Mazur served upon Ms. Chi a 'Summary of Conference' letter and directed Ms. Chi to cancel the meeting with Ms. Bates." *Id.* at ¶ 46. Then on March 15, 2023, Mazur delivered Chi a "'Personnel Notification of Concern and Possible Disciplinary Action,' dated March 10, 2023, calling for an investigation to be undertaken into Ms. Chi." *Id.* at ¶ 47. On March 21, 2023, "Mazur held a hearing concerning Ms. Chi, based on an allegation from the white/Caucasian Debra Solt that Ms. Chi and the marketing team under Ms. Chi were not sufficiently 'supporting' Ms. Solt. Defendant Mazur did not talk with Ms. Chi's marketing team in the course of her investigation." *Id.* at ¶ 48. The following day, Chi informed Mazur that "Catapult had behaved unprofessionally and abusively to three members of Ms. Chi's marketing staff" and Autumn Widdoes—a member of Chi's marketing staff—was "close to resigning." *Id.* at ¶¶ 49, 86. Chi alleges that Mazur "was completely dismissive of this complaint." *Id.* at ¶ 49.

On March 27, 2023, Chi sent defendant Cedric Cole, the CCSD Executive Manager - Diversity and Affirmative Action Programs/ADA and Title IX Coordinator, a "request to investigate all of her ongoing concerns with" Mazur. *Id.* at ¶ 50. Cole was the "individual in the management of [CCSD] responsible for investigating and processing charges of discrimination, harassment, bullying and unlawful retaliation." *Id.* Within hours of Chi's contact, Cole denied Chi's request. *Id.* On April 10, 2023, Mazur "called Pat Breen, one of Ms. Chi's direct reports, into Defendant Mazur's office in order to obtain negative information about Ms. Chi." *Id.* at ¶ 51. Chi alleges that when Breen praised Chi, "Mazur stopped taking notes and terminated the meeting."[8] *Id.*

On April 11, 2023, Chi "requested a reasonable accommodation to the disabilities she had developed." *Id.* at ¶ 52. On April 13, 2023, Chi was contacted by Angie Montalvo from the Affirmative Action department about the ADA request, at which point Chi "informed Ms.

---

[8] Chi does not allege in her complaint how she knows this. *See* ECF No. 1 at ¶ 51.

Montalvo of the discrimination and pay inequity she had experienced, and about how Defendant Mazur had attempted to pressure Ms. Breen into providing a negative statement about Ms. Chi." *Id.* at ¶ 54. Chi does not state whether any result came of this meeting in her complaint. *See id.* However, she alleges that on April 12, 2023, Mazur "delivered to" Chi an Oral Conference Summary, "a disciplinary measure, that Defendant Mazur then demanded Ms. Chi sign." *Id.* at ¶ 53.

On April 13, 2023, Chi alleges that she witnessed Solt "yelling at an employee of Vegas PBS, telling this individual that she was not to provide to Ms. Chi data that Ms. Chi requested that would have shown that Ms. Solt was dishonest in allegations that Ms. Solt had made against Ms. Chi." *Id.* at ¶ 55. The following day, Chi reported to Montalvo "about the unfair and differential treatment that she had experienced relative to Brandon Merrill," the Finance Director for the Vegas PBS department of CCSD, who is a white man also reporting to Mazur. *Id.* at ¶¶ 56, 75. Chi does not allege in her complaint any ways in which she and Merrill were treated differently. *See id.*

On April 17, 2023, Chi filed two complaints on the CCSD EthicsPoint system, one against Mazur and Solt for "making false claims in violation of CCSD Policy R-3100, Code of Ethics, and for promoting a culture of abusive, harassing, and bullying behavior" and the second against Mazur for "self-dealing and violating CCSD Policy R-3100, Code of Ethics, for exclusively hiring white/Caucasian vendors with the understanding that these well-compensated white/Caucasian vendors would lodge complaints against the non-white Ms. Chi." *Id.* at ¶ 57.

On April 19, 2023, Chi "notified" Montalvo that Chi had been "falsely accused of recording an in-person meeting with Mr. Merrill." *Id.* at ¶ 58. Chi allegedly told Montalvo that "Their tactic is to literally bully me to death until I have a stroke or heart attack. They will not stop." *Id.* Chi does not provide any details about this meeting with Merrill, so the record is left unclear as to when it happened, what was discussed, or what she was accused of recording. *See id.* That day, Chi filed three more complaints (for a total of five complaints in three days) in the

EthicsPoint system. *Id.* at ¶ 59. The first was against Mazur because "under Defendant Mazur's management of the Vegas PBS department of [CCSD], women and people of color were systemically not making it past the three-year probationary period"; the second was "a detailed complaint of an inappropriate sexual relationship between John Turner, the second in command at the Vegas PBS department of [CCSD], and Ms. Bates, a white female of inferior qualifications"; and the third was against Mazur for "improper use of security cameras in order to spy on Vegas PBS employees." *Id.* The latter two were closed on April 27, 2023, and the first was closed on May 4, 2023. *Id.* On April 26, 2023, Chi contacted and left a voicemail for CCSD Chief Human Resources (HR) Officer Carol Tolx, then "followed up by emailing her written complaint against Ms. Solt."[9] *Id.* at ¶ 60.

On April 27, 2023, Mazur demanded Chi sign a second "Summary of Conference" and a "Cease and Desist" order, this time demanding that Chi refrain from audio recording meetings. *Id.* at ¶ 61. That day, Chi emailed Cole, Tolx, Montalvo, and Chi's union representatives about "having been 'ambushed' by Defendant Mazur about the 'Summary of Conference' and 'Cease and Desist'" and that she "had to see the onsite nurse due to weakness and numbness in her left arm and due to severe high blood pressure symptoms." *Id.* at ¶ 62. Chi repeated that "[i]t appears that their tactic is to bully me to death, literally, until I have a stroke or heart attack." *Id.* The following day, Chi "provided" to Cole, Tolx, "and others," Breen's "witness statement regarding Ms. Solt" and Chi's statement that "multiple employees complained that five videographer positions at the Vegas PBS department of Defendant Clark County School District all had recently went to white/Caucasian candidates."[10] *Id.* at ¶ 64. That same day, Cole closed the investigation into Chi's discrimination and racism complaints, stating that Chi's claims were unsubstantiated. *Id.* at ¶ 63. Chi then alleges that on April 30, 2023, she "forwarded to Ms. Tolx her email of April 18, 2023, to Defendant Cole regarding women and persons of color not

---

[9] It is not clear what Chi means by this statement.
[10] Neither of these statements is attached to the complaint or any subsequent briefing, so their content is otherwise unknown.

completing their three-year probationary periods under Defendant Mazur's management of the Vegas PBS department of Defendant Clark County School District."[11] *Id.* at ¶ 65.

On May 8, 2023, an otherwise unidentified person named Jeremy Helal "reported that management of the Vegas PBS department of Defendant Clark County School District instructed him to remove Ms. Chi's name, and that of Kipp Ortenburger, from the Emmy submissions being made by Vegas PBS."[12] *Id.* at ¶ 66. Chi reported this to Cole, Tolx, and her union representatives "on May 19, 2023, and, adding more details, on May 21, 2023."[13] *Id.* However, on May 17, before she reported this issue, Chi (as well as Ortenburger) had been reinstated as a nominee by the Emmy Board of Directors but "was obligated to pay the $500 fee in order to be reinstated as a nominee, even though she should have been listed on the nominee slate submitted by the Vegas PBS department of [CCSD] and, therefore, this cost should have been borne by [CCSD]." *Id.* at ¶ 68.

Chi alleges that on May 9, 2023, she "sent in the completed form requesting an accommodation under the ADA." *Id.* at ¶ 67. On May 19, Mazur "unilaterally denied Ms. Chi's request to work from home as a reasonable accommodation to her covered disability. Defendant Mazur then ordered Ms. Chi to use sick time benefits for days Ms. Chi previously worked." *Id.* at ¶ 69. Chi alleges that other senior leaders within the Vegas PBS department of [CCSD], specifically individuals who were white/Caucasian, routinely were allowed to work from home without first having to obtain permission from" Mazur; however, "[i]t is not known whether Defendant Mazur provided this benefit to white/Caucasian individuals as a reasonable accommodation under the ADA or whether it was an act of favoritism undertaken outside the scope of the ADA." *Id.* at ¶ 70. On May 22, 2023, Chi called CCSD's legal department to discuss

---

[11] I note that Chi does not allege having sent any emails, to Cole or anyone else, regarding the failure to hire people of color following their three-year probationary period, and in fact, despite providing an almost day-by-day description of her April activity, does not allege that anything happened on April 18, 2023, whatsoever.

[12] Chi does not explain how she learned this information. *See* ECF No. 1 at ¶ 66.

[13] What details this report included is not clear, and Chi does not provide documentation to demonstrate what she stated.

the legality of Mazur's proposition, but "'Diane,' the person who answered the telephone for the legal department, refused to assist Ms. Chi." *Id.* at ¶ 71. On May 30, 2023, Mazur "again[14] demanded that Ms. Chi put in for a full sick day on April 25, 2023, even though Ms. Chi had worked from home that day following a medical appointment. Ms. Chi did this based on Defendant Mazur's demand, even though Ms. Chi believed Defendant Mazur's demand to be unlawful." *Id.* at ¶ 74.

On May 26, 2023, Chi asked Turner "why her named was removed from the slate of Emmy nominees submitted by the Vegas PBS department of [CCSD]. Mr. Turner responded by accusing Ms. Chi of calling Vegas PBS 'racist' in her Emmy acceptance speech. Ms. Chi's Emmy acceptance speech had received a standing ovation."[15] *Id.* at ¶ 72.

Chi alleges that at the end of May she "learned that Defendant Mazur had asked to use Vegas PBS security cameras specifically to surveil" her. *Id.* at ¶ 73. She states that on June 13, 2023, she was informed that her "business trip mileage and gas expenses for the national PBS Conference in San Diego were not approved by Mr. Merrill . . . ." *Id.* at ¶ 75. Other senior leaders, including Turner, Bates, Natalie Cullen, "all white/Caucasian individuals, were reimbursed not only for round-trip travel to the national PBS conference in San Diego, but also for round-trip airfare for travel back to Las Vegas, in the course of the conference, for a major donor event." *Id.*

On July 11, 2023, Chi says she learned she had been excluded from two planning meetings for major events— the March 2024 Gala and the President's Meet and Greet—even though Chi's "job duties and responsibilities included event planning, including major events." *Id.* at ¶ 76. Several days later, Chi learned that "Mazur was attempting to induce employees of [CCSD] to accuse Ms. Chi of 'stirring up racial hostilities in the office' after Ms. Chi's well-received Emmy's

---

[14] The complaint does not list a previous demand from Mazur regarding April 25, 2023. Chi describes, much later in her complaint, submitting paperwork for a leave of absence under the FMLA on April 25, *2024*, but this appears to have been for an expected absence in May 2024. ECF No. 1 at ¶ 151.

[15] I note that the complaint leaves unclear whether Chi is referring to the 2023 Emmys or an earlier iteration when she apparently won an Emmy, gave an acceptance speech that Turner described as accusing Vegas PBS of being racist, and received a standing ovation. *See* ECF No. 1 at ¶ 72.

On August 10, 2023, Chi reported to the CCSD HR department that Merrill and Mazur "knowingly approved a fraudulent advertising invoice from Spirit Magazine,[17] for a significant amount over and above the price that had been negotiated by Ms. Chi[,]" bypassing "the normal invoice review process" because Chi "normally approved all advertising invoices as part of her regular assigned duties." *Id.* at ¶ 83. The next day, Chi was notified that she had been appointed to CCSD's Superintendent's Anti-Racism, Equity and Inclusion Committee. *Id.* at ¶ 85. Also on that day, Chi filed for intermittent leave under the Family and Medical Leave Act (FMLA). *Id.* at ¶ 84. Chi does not explain her reasoning for doing so. *See id.*

On August 14, 2023, Mazur introduced Chi's white subordinate, Widdoes, as "Head of Events" on a call with a vendor, even though this was Chi's role. *Id.* at ¶ 86. That day, Chi reported to Christopher Klemp, who worked in CCPD's HR department, that Mazur "had a pattern of making false statements to 'cover up' bad, bullying and inappropriate behavior on the part of the white/Caucasian Ms. Solt. Ms. Chi stated: 'On 7/12/23, I reported a serious, racially tinged and hostile meeting with [Solt] and her team, to which I deserved a response a long time ago.'" *Id.* at ¶ 87. The following day, Chi was "excluded from a meeting with Catapult to discuss the event planning for Vegas PBS for the upcoming school year. Ms. Chi had overseen event planning as part of her assigned duties." *Id.* at ¶ 88. Then, on August 28, 2023, Chi "sought treatment from an on-site nurse because of a very low pulse rate and numbness in her left hand." *Id.* at ¶ 89.

On August 30, 2023, Chi again requested of Mazur the status of her July 12, 2023 complaint about Solt and Loftus; CCSD "recently had promoted Ms. Loftus from contractor to full-time administrator without regard to concerns that Ms. Chi raised." *Id.* at ¶ 90. On September 11, 2023, Mazur

> interrogated Ms. Chi about how Ms. Chi obtained free tickets to the Women's Leadership Conference event for Stephanie Doto and VaNessa Cruz. Both Ms. Doto and Ms. Cruz were women of color. In previous years, the Women's

---

[17] "Spirit Magazine was a periodical in which Vegas PBS advertised." ECF No. 1 at ¶ 83.

Leadership Conference had donated tickets for Vegas PBS employees to attend. Defendant Mazur then proceeded to block the two women of color from attending the event on the tickets that Ms. Chi procured, claiming that securing the tickets to the event, this particular year, and by Ms. Chi, violated a gift policy of [CCSD]. Defendant Mazur then attempted to discipline Ms. Chi based on Defendant Mazur's false accusation that Ms. Chi violated the gift policy of [CCSD]. Ms. Chi returned the free tickets to the event planner in response to Defendant Mazur's threat. Ms Chi then emailed Defendant Cole and Ms. Tolx, human resources officials of [CCSD], about this matter involving the exclusion of women of color at the Vegas PBS department of [CCSD], but the human resources officials elected to ignore the matter.

*Id.* at ¶ 91. The next day, Chi attended her first CCSD Anti-Racism Committee meeting and was informed that an "anti-racism poster" must be displayed in every CCSD building per policy. *Id.* at ¶ 92. Noticing no such poster in the Vegas PBS department, Chi informed Dr. Sam Scavella, a member of the committee, and also told him that "Vegas PBS television station had a 'notable' diversity problem." *Id.* at ¶¶ 93, 94, 121.

On September 13, 2023, Chi submitted her initial intake complaint with the Nevada Equal Rights Commission (NERC). *Id.* at ¶ 95. One week later, without notifying Chi, Mazur "notified staff and vendors that she had taken away Ms. Chi's public relations responsibilities and had reassigned those duties to Ms. Cullen, a white/Caucasian whose qualifications were inferior to those of Ms. Chi, as Ms. Cullen had no prior experience managing a public relations function." *Id.* at ¶ 96.

On September 22, 2023, Chi contacted CCSD's HR department regarding the status of her July 12, 2023 complaint about Solt and Loftus, also stating that Mazur had removed the public relations component of her job. *Id.* at ¶ 97. Three days later, Cole emailed Chi, seemingly responding to her September 22 inquiry, "stating that there was 'nothing' to support Ms. Chi's allegations of discrimination and retaliation." *Id.* at ¶ 98. She contacted CCSD's HR department on October 6, 2023, asking that they "place a notice in her file of her appointments to the Anti-Racism Committee of [CCSD] and to the National PBS Marketing Advisory Council" but Greathouse responded on October 23 that CCSD would not do so. *Id.* at ¶ 99.

On October 17, 2023, Chi filed a second grievance against Mazur, but it was denied by Greathouse two days later without investigation.[18] *Id.* at ¶ 100. Cole responded on October 24, 2023, that CCSD would not investigate the grievance. *Id.* at ¶ 101. Cole was then promoted to Interim Chief HR Officer, replacing Tolx, while still overseeing the Diversity and Affirmative Action Programs/ADA. *Id.* at ¶ 102.

On October 31, 2023, Chi "observed white/Caucasian Ms. Bates openly scolding a new Asian female employee, Irene Pengson, in front of others." *Id.* at ¶ 103. Several days later, "white/Caucasian Ms. Solt screamed at Ms. Chi to get out of her office after Ms. Solt requested that a silent auction "gift basket" be prepared for pick-up that afternoon, ostensibly for Reggie Burton, an individual who formerly was on the Board of Directors for [SNPT]." *Id.* at ¶ 104. No action was taken against Solt for this "outburst[.]" *Id.* On November 4, 2023, Chi alleges that she contacted Burton "as to whether he was satisfied with the gift basket that was prepared ostensibly on his behalf" but Burton told Chi that he had never requested a basket. *Id.* at ¶ 106. "Chi was reprimanded for contacting Mr. Burton about the gift basket that Ms. Solt falsely claimed Mr. Burton requested." *Id.*[19]

On November 3, 2023, Chi "made a complaint" to Joe Caruso, Special Assistant to CCSD Superintendent Jesus Jara, "regarding the culture of racism, discrimination and workplace bullying at the Vegas PBS department of [CCSD] during Defendant Mazur's tenure." *Id.* at ¶ 105. He called Chi on November 6 to tell her that "there was nothing he could do to help . . . ." *Id.* at ¶ 107.

On November 21, Merrill "admitted to Ms. Chi that Defendant Mazur pressured him into making a false written statement against Ms. Chi."[20] *Id.* at ¶ 108. On November 27, 2023, Mazur "removed the Vegas PBS website from under Ms. Chi's purview, giving these responsibilities to

---

[18] Chi does not explain what she included in this grievance.
[19] Chi does not disclose what form this reprimand took, or who reprimanded her.
[20] Chi is presumably referring to Chi allegedly being accused of recording a meeting with Merrill. *See* ECF No. 22 at ¶ 58. Although Chi never stated who made that report, the record does not appear to reflect any other reports by Merrill.

an expensive outside contractor who was white/Caucasian." *Id.* at ¶ 109. The next day, Chi began to add Luke Puschnig, Chief Legal Counsel for CCSD, to emails "regarding" the contracts between Vegas PBS and Spirit Magazine.[21] *Id.* at ¶ 110; *see* ECF No. 22 at 14.

On December 1, 2023, Greathouse "ordered" Chi to "stop emailing the [CCSD HR department] about her workplace complaints." *Id.* at ¶ 111. That same day, Mazur "ordered" Chi to stop attending event planning meetings—Chi explains that these fell under her assigned duties, and "were re-assigned, in part, to an expensive outside contractor who was white/Caucasian." *Id.* at ¶ 112. Chi emailed Mazur, Cole, Hall, and Klemp that Mazur "continued to retaliate and defame Ms. Chi 'by abusing the power of (her) title and office.'" *Id.* at ¶ 113.

On December 6, 2023, Chi "made a complaint" to CCSD HR directors and Cole about "'inequitable and differential treatment' by Defendant Mazur regarding the white/Caucasian Ms. Solt's unprofessional behavior towards colleagues." *Id.* at ¶ 114. Two days later, Mazur issued Chi a disciplinary write-up and[22] "accused Ms. Chi of 'unprofessionalism' toward the white/Caucasian Sally Dewhurst of UKNY, LLC. Ms. Dewhurst was the expensive outside contractor that Defendant Mazur hired to take over, in part, Ms. Chi's event planning duties and responsibilities." *Id.* at ¶¶ 115–16.

On December 13, 2023, Chi "requested a one-on-one meeting with Defendant Jesus Jara. Carmen West told Ms. Chi that her request would be forwarded to Defendant Jara's Chief of Staff Shana Rafalski. Ms. Chi never heard back from Ms. Rafalski or Defendant Jara."[23] *Id.* at ¶ 117. Two days later, Chi filed a fifth complaint against Mazur in the CCSD EthicsPoint system, this time for "corruption and self-dealing . . . ." *Id.* at ¶ 118. This complaint was "closed" on January 31, 2024. *Id.* On December 19, 2023, "Mazur offered a promotion to white/Caucasian Mr.

---

[21] Chi does not specify with whom these email communications were being had or what these emails contained.

[22] The complaint leaves unclear whether the disciplinary write-up was about Chi's unprofessionalism toward Dewhurst, or whether Mazur provided Chi the disciplinary write-up and then at the same time they discussed Chi's alleged behavior. *See* ECF No. 1 at ¶ 116.

[23] The complaint does not explain who Carmen West is, and she is not mentioned again. It is also not explained by what means Chi requested the meeting.

Ortenburger to Director of Strategy and Development, overseeing data analytics. This, once again, was a removal of job duties from Ms. Chi . . . ." *Id.* at ¶ 119.

On December 27, Mazur gave Chi a disciplinary write-up "for a third investigatory hearing" and demanded Chi to sign a "Recommendation for Suspension." *Id.* at ¶ 120. Chi alleges that this was procedurally improper because "[u]nder the policies and practices of [CCSD], an employee is supposed to be given 30 days to respond before elevating the matter to a disciplinary suspension." *Id.* Chi "requested a hearing, an appeal of the suspension, and arbitration." *Id.*

On January 16, 2024, Chi contacted Dr. Scavella from the anti-racism committee "for assistance" but he did not respond. *Id.* at ¶ 121. On January 28, Chi "emailed a 35-page response to [CCSD]'s HR department, to Defendant Jara, and to Mr. Puschnig."[24] *Id.* at ¶ 122.

On February 5, 2024, Chi submitted paperwork seeking an FMLA leave of absence, *Id.* at ¶ 123. On February 22, Chi "notified Defendant Brenda Larsen-Mitchell, the newly-appointed interim superintendent for [CCSD], of the continuing issues that Ms. Chi has experienced regarding unlawful discrimination, harassment, and retaliation." *Id.* at ¶ 124.

On March 11, 2024, Mazur instructed Chi "that she is not permitted to attend the [March 22,] 2024 [Vegas PBS] Gala. Defendant Mazur strongly suggested that Ms. Chi would be arrested if she elected to attend this public event." *Id.* at ¶ 125. Chi notified CCSD's HR department, as well as Larsen-Mitchell, of this conversation the following day. *Id.* at ¶ 126. On March 14, Chi filed another EthicsPoint complaint—her seventh overall—against Bates for her "abusive behavior towards employees. The case was closed."[25] *Id.* at ¶ 127.

On March 20, 2024, Mazur "conducted an unscheduled, early performance appraisal, just nine months after Ms. Chi's prior performance appraisal. Defendant Mazur then stated that Ms. Chi's contract of employment was not being renewed for the 2024–2025 school year term." *Id.* at

---

[24] Chi does not specify what this response was about, though it was presumably related to the December recommendation for suspension. *See* ECF No. 1 at ¶¶ 120, 122.

[25] Chi does not explain in her complaint whether this report arose out of the November 23, 2022 incident between Chi and Bates; the October 31, 2023 incident Chi witnessed between Bates and Pengson; both; or something else entirely.

¶ 128. Chi alleges that "[t]his notification was significantly earlier than was normal practice for probationary employees whose contracts were not being renewed." *Id.* Mazur offered that if Chi resigned, "her negative reviews would be removed from her personnel file" but Chi refused. *Id.* at ¶ 129. Immediately afterward, Chi emailed Larsen-Mitchell, Puschnig, and CCSD's Chief HR Officer RoAnn Triana about the "interaction" with Mazur. *Id.* at ¶ 130. "Ms. Chi called attention to Defendant Mazur's notice of Defendant Clark County School District's non-renewal of Ms. Chi's contract was 'interesting,' as Ms. Chi had just made another complaint about workplace conditions to [CCSD], and to Ms. Chi's union, earlier that morning."[26] *Id.*

On March 21, 2024, Chi "notified" the CCSD Board of Trustees and an unnamed member of the Nevada General Assembly "of the rampant racism, unlawful discrimination, harassment, and retaliation that had been occurring under the direction and command of Defendant Mazur . . . ." *Id.* at ¶ 131. On March 28, Chi received the telephonic hearing with CCSD she requested regarding her suspension. *Id.* at ¶ 132. In the hearing, "Demetrius Johnson, the employee of Defendant Clark County School District who conducted the hearing, evidenced extreme hostility toward Ms. Chi and her legal representative . . . ." *Id.* On April 1, 2024, Chi "notified" Justin Gastwirth, a member of the Board of Directors of SNPT, "of the ongoing discrimination and retaliation directed at her, including her disciplinary suspension, which had occurred and continued even after Ms. Chi submitted a Charge of Discrimination with the [NERC]." *Id.* at ¶ 133.

On April 2, 2024, the CCSD HR department notified Chi she was suspended for five days. *Id.* at ¶ 134. The next day, CCSD HR offered Chi an employment contract for the following year, which Chi accepted. *Id.* at ¶¶ 135–36. However, on April 4, the CCSD HR department rescinded the offer explaining that it had been a "test email in error." *Id.* at ¶ 137. On April 15, Chi "renewed her documentation for an ADA accommodation. Ms. Chi again was placed on a heart

---

[26] The complaint does not make any other mention of a March 20, 2024 complaint to CCSD or Chi's union, nor does Chi affix a copy of the union complaint.

monitor by her treating physician."[27] *Id.* at ¶ 138. The same day, Chi "submitted her response" to her March 20, 2024 performance evaluation. *Id.* at ¶ 139. Two days later, she "urged" CCSD's internal auditor to "investigate 'financial improprieties and the misappropriation of public funds at Vegas PBS'" and SNPT "which have gone ignored.'" *Id.* at ¶ 140. On April 22, Chi sent a document to the Office of the Nevada Attorney General, the City Auditor,[28] and the Federal Communications Commission "outlining the financial improprieties at the Vegas PBS department of Defendant Clark County School District under the executive management of Defendant Mazur." *Id.* at ¶¶ 141–43. On April 23, Chi contacted the U.S. Department of Labor requesting an investigation into illegal labor practices at Vegas PBS. *Id.* at ¶ 144.

On April 23, 2024, "Mazur unilaterally implemented an unlawful and punitive demotion of Ms. Chi to a secretarial job with the Family Support Center at a distant location" where she would be reporting to a Director I. *Id.* at ¶ 146. Chi alleges that this was not only in violation of CCSD policy and her union contract, but also her reasonable accommodation "requested by, and provided to" her[29] because the new position required significantly more driving. *Id.* at ¶ 147. Chi alleges that on April 24, "unable to report for work at the Family Support Center as the position was outside the scope of her reasonable accommodation under the ADA, Ms. Chi was forced to use a sick day." *Id.* at ¶ 148. That day, she left Cole a voicemail "complaining of the re-assignment to the distant Family Support Center . . . ." *Id.* at ¶ 149.

On April 25, Chi "submitted paperwork for a leave of absence under the FMLA for May 1, 2024, through May 24, 2024." *Id.* at ¶ 151. This leave was granted. *See id.* at ¶ 158 ("On May 28, 2024, Ms. Chi returned to work from FMLA leave . . . .").

---

[27] I note that this is the first mention in the complaint of Chi being placed on, or utilizing, a heart monitor.

[28] Presumably the City Auditor of Las Vegas.

[29] Nowhere in the complaint does Chi explain what reasonable accommodations had been previously provided to her.

On April 29, Chi received formal written notice that her employment contract would not be renewed due to "lack of performance." *Id.* at ¶ 152. However, the same day she was told she would "remain assigned to work at the Vegas PBS department" of CCSD until her contract ran out on June 28, 2024. *Id.* at ¶ 153.

> Chi was then threatened to be charged with criminal trespass if she were to enter any property of [CCSD] without first receiving the permission of the human resources department of [CCSD]. Ms. Chi then was ordered not to tell anyone, including her direct reports, that she had been transferred back to her contracted role as Director III, Digital Marketing, for the Vegas PBS department of [CCSD].

*Id.* On May 9, 2024, while presumably on FMLA leave, Chi emailed Larsen-Mitchell "the signed copy of Ms. Chi's notice of non-renewal, adding the comment: 'No woman or person of color has passed their 3-year probation under Mare Mazur.'" *Id.* at ¶ 154.

Several weeks prior, on April 23, Chi had learned that Mazur approved "outside consultant Justin Cram, a white/Caucasian, to attend" a May 13, 2024 PBS national conference in Las Vegas and "authorizing reimbursement for Mr. Cram's conference pass and for Mr. Cram's travel expenses from Los Angeles, California." *Id.* at ¶ 145. Chi was not permitted to attend, *id.*, though she does not explain in her complaint whether this was disciplinary, a function of her role, or the fact that she was on FMLA leave. On May 13, 2024, Chi emailed the national PBS CEO, Senior Director of Events, and Chief Diversity Officer—in addition to blind copying members of the press—regarding a national PBS conference in Las Vegas set to start that day. *Id.* at ¶ 155. She stated that "Mare Mazur is trying to intimidate and physically threaten my personal safety with the improper use of Cosmopolitan security, Metro police and CCSD police" and "I will be seeking legal recourse should I be hassled by security." *Id.* That day, Chi and a journalist were approaching the convention[30] "to attend the national PBS conference, at which time Ms. Chi was confronted by four or more security officers of The Cosmopolitan of Las Vegas. Ms. Chi was escorted off the property under threat of arrest for 'trespassing on private property.'" *Id.* at ¶ 156.

---

[30] As alleged, Chi was out on approved FMLA leave.

Chi alleges that on May 24, 2024, she was "directed to work from decrepit office space of" CCSD "less than a block from the Vegas PBS office building" where she had worked previously. *Id.* at ¶ 157. At the time, she was still on FMLA leave. *See id.* at ¶ 158. Once she returned from her leave on May 28, she emailed Mazur and Larsen-Mitchell that "due to her ADA accommodation, Ms. Chi needed to work from home." *Id.* at ¶ 158. Chi alleges that she "discovered that her direct reports had cut off all communications with her at the direction of" Mazur. *Id.* The next day, Chi emailed CCSD's Chief of Police "to report the misuse of police resources and the illegal surveillance of Vegas PBS employees under the direction of Defendant Mazur and Mr. Turner." *Id.* at ¶ 159. Chi's access to her email was severed on June 13 and her balance of paid sick time was zeroed out on June 23, and she was not provided an explanation for the latter. *Id.* at ¶¶ 160–61. On June 28, 2024, Chi's employment contract concluded with CCSD. *Id.* at 162–63. Chi initiated this action on October 28, 2024. *See* ECF No. 1.

## II.    Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

1   that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a

2   sheer possibility that a defendant has acted unlawfully." *Id.*

3         If the court grants a motion to dismiss for failure to state a claim, leave to amend should

4   be granted unless it is clear that the deficiencies of the complaint cannot be cured by

5   amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a

6   court should "freely" give leave to amend "when justice so requires," and in the absence of a

7   reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated

8   failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

9   party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*,

10  371 U.S. 178 (1962).

11  **III.    Discussion**

12        **A.  CCSD defendants' motion to dismiss (ECF No. 22)**

13              *1.  Exhaustion of sex-based discrimination claim*

14        CCSD begin their motion to dismiss by arguing that Chi failed to exhaust her sex-based

15  discrimination administrative remedies. ECF No. 22 at 11–12. Specifically, they argue that in her

16  charge to the EEOC, Chi did not raise a single allegation regarding sex discrimination. *Id.* at 12

17  (citing EEOC discrimination charge, ECF No. 1-1 at 2–5).[31] The only indication that she was

18  claiming sex discrimination was that she checked the box labelled "sex discrimination." ECF

19  No. 1-1 at 4. Chi's response completely neglects to address this issue.[32] *See* ECF No. 40; *see also*

20  Reply, ECF No. 42 at 3–4.

21

22  ─────────────────────────

23  [31] Local Rule IC 2-2(3) requires that exhibits and attachments "be attached as separate files." All three
    exhibits are part of the same document attached to the complaint. *See* ECF No. 1-1. Chi is warned that

24  failure to adhere to the local rules in the future may result in sanctions, including the striking of future
    filings.

25  [32] I note that Chi's response does not "map onto" the motion, discussing the claims in numerical order
    instead of responding to each issue raised by the CCSD defendants as they were laid out in the motion.

26  *Contrast* Mot., ECF No. 22, *with* Opp'n, ECF No. 40. It is unclear why it was written in this format, but it
    made Chi's opposition difficult to discern and required significantly more time to comprehend Chi's
    arguments than should have been necessary.

The Title VII exhaustion requirement is a mandatory claim processing rule. *Fort Bend Cty. v. Davis*, 587 U.S. 541, 551 (2019); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Under Title VII, a plaintiff must exhaust . . . administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20, 2002), *overruled on other grounds by Ft. Bend Cnty.*, 587 U.S. 541. The court should "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* (internal quotation omitted). However, "[a]llegations of discrimination not included in the plaintiff's administrative charge 'may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.'" *Id.* (quoting *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)). "[T]the crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (internal quotation omitted).

As the defendants correctly point out, the charge of discrimination delves into race, age, and disability discrimination, as well as retaliation, but does not address sex discrimination. *See* ECF No. 1-1 at 3–4. Once, she describes herself as "the only Chinese American female to serve in a leadership capacity in the entire CCSD administration." *Id.* at 3. But, aside from checking the box, she does not even *mention* sex discrimination in her page-and-a-half charge. *Id.* at 3–4. Even her retaliation claim is limited to "retaliation for complaining about race-based harassment." *Id.* at 3. Merely checking the box is not enough. *Brooks v. ATC/VANCOM, Inc.*, 2007 WL 1063059, at *4 (D. Nev. Apr. 4, 2007) (holding that the "mere act of checking the box marked 'Age', alone, is insufficient to satisfy the requirement that Plaintiff exhaust her administrative remedies before filing a Complaint with this Court"). It is possible that Chi could have argued that the sex discrimination charge was "reasonably related" to the other charges, but she failed to address this issue entirely in her response. Local Rule 7-2(d) provides that the failure of an opposing party to file points and authorities constitutes that party's consent to the granting of the motion.

LR 7-2(d). Thus, I find that Chi did not exhaust her administrative remedies for her sex-discrimination claim and dismiss her claim under 42 U.S.C. § 2000e2(a)—which Chi lists as Claim 2—against CCSD.  While seemingly futile, because leave to amend shall be given with liberality, this claim is dismissed without prejudice and with leave to amend.

### 2. *Individual defendants sued in their official capacities*

CCSD defendants next argue that, regarding Claims 9,[33] 10,[34] 11,[35] 12,[36] and 13,[37] the individual defendants are not viable parties. ECF No. 22 at 12–13. They argue that Chi cannot sue Mazur, Cole, Jara, and Larsen-Mitchell in their official capacities because they are redundant to her claims against CCSD. *Id.* at 12. Chi does not respond to this argument in her opposition. *See* ECF No. 40; *see also* ECF No. 42 at 4.

"Official capacity suits are generally another way of pleading an action against an entity of which the officer is an agent." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). In a case discussing *Monell* liability, the Supreme Court stated that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "A plaintiff cannot elect which of the defendant formats to use." *Abbott*, 954 F. Supp. at 204. "If both are named, it is proper *upon request* for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court *upon request* to dismiss the officer and substitute instead the local government entity as the correct defendant." *Id.* (emphasis added).

---

[33] 42 U.S.C. § 1981: race-based discrimination (against CCSD and Mazur in her official capacity).

[34] 42 U.S.C. § 1981: race-based retaliation (against CCSD and Mazur in her official capacity).

[35] 42 U.S.C. § 1983: denial of protected liberty interest (against Mazur and Cole in their individual and official capacities, and against Jara and Larsen-Mitchell in their official capacities).

[36] 42 U.S.C. § 1983: interference with first amendment rights (against Mazur and Cole in their individual and official capacities, and against Jara and Larsen-Mitchell in their official capacities).

[37] 42 U.S.C. § 1985: unlawful conspiracy to deny civil rights (against CCSD and SNPT, against Mazur and Cole in their individual and official capacities, and against Jara and Larsen-Mitchell in their official capacities (all defendants)).

Here, in Claims 9 and 10, Chi seeks recovery against CCSD and Mazur in her official capacity. I find that because Chi fails to respond to this argument, she consents to it being granted,[38] and because an official capacity suit against a local officer is no different than against the local office, and because Mazur was an employee of CCSD, Claims 9 and 10, to the extent that they are against Mazur, should be dismissed without prejudice as duplicative. Likewise, Claim 13 is levied against CCSD, as well as against Mazur, Cole, Jara, and Larsen-Mitchell in their official capacities, and therefore each of these claims against the individual CCSD employees is duplicative. Claim 13 against Mazur, Cole, Jara, and Larsen-Mitchell is therefore dismissed to the extent it seeks recovery against them in their official capacities. Although seemingly futile, these claims are dismissed without prejudice. However, I note that because Mazur and Cole are also sued in their individual capacities, this portion of the CCSD defendants' motion to dismiss cannot completely eliminate Chi's Claim 13 against them.

Unlike claims 9, 10, and 13, Chi does not bring Claims 11 and 12 against CCSD, only against Mazur and Cole in their individual and official capacities, and against Jara and Larsen-Mitchell in their official capacities. As discussed in *Abbott*, "[i]f only the official-capacity officer is named, it would be proper for the Court *upon request* to dismiss the officer and substitute instead the local government entity as the correct defendant." *Abbott*, 954 F. Supp. at 204 (emphasis added). CCSD defendants do not make such a request. *See* ECF No. 22 at 12–13. Chi does not either. *See* ECF No. 40. In fact, as previously discussed, Chi does not even address this issue in her response. Because no request was made, because Chi failed to respond to this argument, and because "[t]here is no longer a need to bring official-capacity actions against local government officials," *Graham*, 473 U.S. at 167 n.14, and "[a] plaintiff cannot elect which of the defendant formats to use," *Abbott*, 954 F. Supp. at 204, I find that the official capacity claims in Claims 11 and 12 against Mazur, Cole, Jara, and Larsen-Mitchell must be dismissed.[39] Although

---

[38] *See* D. Nev. LR 7-2(d).

[39] Because there are no § 1983 claims raised against CCSD, I do not address the *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), "custom, policy, or practice" argument raised in CCSD defendants'

seemingly futile, this dismissal is without prejudice and with leave to amend. However, as before, I note that because Mazur and Cole are also sued in their individual capacities, this portion of the CCSD defendants' motion to dismiss cannot completely eliminate Chi's Claims 11 and 12 against them.

Therefore, Claims 9 through 13 are dismissed against the individual defendants to the extent that they are sued in their official capacities. Because all of the claims against Jara and Larsen-Mitchell are in their official capacities, and because the only claims against them are Claims 11, 12, and 13, all claims against these two defendants are dismissed. Thus, Jara and Larsen-Mitchell are dismissed from this lawsuit.

### 3. *Section 1983 claims*

CCSD defendants next argue that the Eleventh and Twelfth claims under § 1983 against Mazur and Cole in their individual capacities are insufficiently pled and should be barred by qualified immunity. ECF No. 22 at 14. Section 1983 requires a plaintiff to prove that (1) a person acting under color of state law (2) committed an act that deprived him of some right, privilege, or immunity protected by the Constitution or federal law. *Fed'n of Afr. Am. Contrs. v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996), *overruled on other grounds by Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023); *Vandermeer v. Douglas Cnty.*, 15 F. Supp. 2d 970, 984–85 (D. Nev. 1998). "The first inquiry in any § 1983 action is whether the plaintiff has been deprived of a right secured by the Constitution or federal laws." *Chapen v. Munoz*, 2007 WL 9728687, at *2 (D. Nev. Aug. 6, 2007) (citing *Baker v. McCollan*, 443 U.S. 137, 142–47 (1979) and *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1996)). Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: "(1) the official violated a constitutional right; and (2) that right was clearly established at the time of the challenged conduct, such that every reasonable official

motion to dismiss. *See* ECF No. 22 at 16–17. However, I also note that because CCSD defendants do not provide any points and authorities for why Claims 9 and 10 should be dismissed against CCSD, Chi may maintain her § 1981 claims against CCSD.

would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (simplified).

### i. Reputation claim (Claim 11)

First, CCSD defendants assert that Chi did not have a constitutionally protected interest in her reputation. *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976) and *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373 (9th Cir. 1999)). In response, Chi raises the argument that, although reputational harm, alone, is not enough, this is a case of "stigma-plus." ECF No. 40 at 17–18. Specifically, a plaintiff can maintain a liberty interest claim where she alleges "(1) the public disclosure of a stigmatizing statement by the government; (2) the accuracy of which is contested; (3) plus the denial of some more tangible interest such as employment." *Id.* at 18 (quoting *Chaudhry v. Aragón*, 68 F.4th 1161, 1170–71 (9th Cir. 2023) (internal quotations and alterations omitted)). In her complaint, Chi states that the defendants disseminated false information about her job performance and about her non-renewal with Vegas PBS; restricted her ability to attend public meetings of the CCSD Board of Trustees "under threat of Ms. Chi being arrested for criminal trespassing"; and made baseless accusations that she was a security threat and posed a danger to colleagues, which was communicated to her office, major donors of SNPT, officials at the Cosmopolitan of Las Vegas, and officials of the National PBS organization. ECF No. 1 at ¶ 224. Although this is not clarified in her complaint, Chi alleges in her response that the "plus" element of stigma-plus is that "Chi lost her job and has been unable to secure alternative employment." ECF No. 40 at 18.

In their reply, CCSD defendants argue that, with regard to Chi's allegation about the statements related to her contract non-renewal, "courts have routinely rejected decisions not to rehire an employee based on poor performance as sufficient to support a 'stigma-plus' claim, or otherwise deprive the employee of a federally protected interest" and only finding stigma-plus "'where remarks in connection with discharge from employment must contain egregious accusations such as charges of immorality, or dishonesty that can cripple an individual's ability

to earn a living.'" ECF No. 42 at 5 (quoting *Moody v. Cnty. of Santa Clara*, 2017 WL 2903159, at *4 (N.D. Cal. July 7, 2017) (internal quotation of *Hyland v. Wonder*, 972 F.2d 1129, 1142 (9th Cir. 1992) omitted)). And regarding the security threat allegations, CCSD defendants assert that Chi "fails to set forth any factual allegations detailing who made the statement, when the statement was made, how it was communicated, who it was made to, etc.," which they argue fails to sufficiently establish the factual groundwork necessary to survive this motion to dismiss. *Id.* at 5–6.

I find that Chi has not pled a plausible claim regarding her stigma-plus reputational damage. Chi undoubtedly sets out allegations that she was stigmatized, but nowhere in her complaint does she sufficiently establish a causal connection between the stigma and some "plus" factor that makes this a potential constitutional deprivation of a liberty interest. Regarding her performance, "charges of incompetence or inability to get along with others do not" implicate a liberty interest. *Wheaton v. Webb-Petett*, 931 F.2d 613, 617 (9th Cir. 1991). Liberty interest issues arise where statements have "more serious consequences, such as a protracted hiatus in employment or a permanent exclusion from a profession or trade." *Id.* Here, the complaint does not include such allegations. In her response, Chi notes that she "lost her job and has been unable to secure alternative employment." ECF No. 40 at 18. Aside from the fact that this is the first time she acknowledges employment consequences, she *still* does not go so far as to state that she lost her job and has been unable to find a new one *because* of the statements made about her. Likewise, with the statements about Chi being a security threat, as CCSD defendants point out in their reply, Chi provides no factual basis to support these allegations, with the only indication that either Mazur or Cole was involved being an allegation that Mazur told Chi "that she [was] not permitted to attend the 2024 Gala. Defendant Mazur strongly suggested that Ms. Chi would be arrested if she elected to attend this public event." ECF No. 1 at ¶ 125. There is no allegation that this was told to others until Chi published this information herself by emailing numerous national PBS officials and members of the press on May 13, 2024, stating that "Mare Mazur is trying to intimidate and physically threaten my personal safety with

the improper use of Cosmopolitan security, Metro police and CCSD police." ECF No. 1 at ¶ 155. In the following paragraph, Chi states that she was confronted by security while trying to enter the conference and "[i]t is believed that this was done at the request of, and at the behest of, Defendant Mazur, Mr. Turner, or someone acting under Defendant Mazur's instruction, recommendation, or direction." *Id.* at ¶ 156. These allegations do not establish that Mazur—let alone Cole—was the one who communicated that Chi was a security threat to others, or if security approached all attendees, thus this allegation is wholly speculative. This is insufficient to establish a viable claim even for the "stigma" element of the "stigma-plus" liberty interest theory, and, as discussed above, Chi's complaint lacked a causal connection between alleged stigma and any "plus" factor in the first place.[40] Therefore, I dismiss Claim Eleven as to defendants Mazur and Cole in their individual capacities. Having dismissed it against all four individual defendants in their official capacities, Claim 11 is dismissed in its entirety, however without prejudice and with leave to amend.

### ii.  First Amendment claim (Claim 12)

In their motion, the CCSD defendants argue that Chi's rights as a public employee are limited to speech "addressing matters of public concern," and her grievances with her employer were wholly individual disputes and grievances. ECF No. 22 at 14–15 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). Further, the communications about "financial improprieties" were made in her official capacity because they have to do with individuals in the office bypassing the normal review process, which is directly related to Chi's job responsibility of approving invoices for Vegas PBS. *Id.* at 15. They also assert that, because she did not have constitutionally protected interests in her reputation or this speech, her rights were not clearly established. *Id.* at 16.

---

[40] Because I find that Chi has failed to state a claim for Claim 11, I do not delve into the full qualified immunity analysis.

Chi argues in her opposition that her statements were core activities protected by the First Amendment: she argues that she complained "both inside and outside of" CCSD about Mazur having a pattern of terminating persons of color from the Vegas PBS management team and for the "financial improprieties" associated with Mazur hiring an unnecessary outside contractor using funds secured from SNPT and therefore "outside the normal and routine budgetary process and . . . without accountability." ECF No. 40 at 19. In her complaint, she alleges that as a result of these communications, she "suffered harassment and bullying in the workplace[,]" "was not provided with the right to work from home[,]" had her name removed from Vegas PBS's slate of Emmy nominees, and had her employment contract terminated. ECF No. 1 at ¶ 233. In their reply, the CCSD defendants argue that all of Chi's claims, even with those outside CCSD, are derivative of her personal grievances within CCSD and therefore are not matters of public concern or, alternatively, were made in her official capacity. ECF No. 42 at 7–8.

As a public employee, Chi's speech is only protected if spoken "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest." *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004). CCSD defendants' reply cites *Chapen v. Munoz* for the proposition that a plaintiff's complaints about discrimination are not "protected by the First Amendment because they address [the plaintiff's] personal employment dispute." ECF No. 42 at 7 (citing *Chapen*, 2007 WL 9728687, at *2). However, earlier in that same sentence, the *Chapen* court noted that "the subjects of discrimination or workplace violence in general can be considered matters of public concern . . . ." 2007 WL 9728687, at *2. The key here is whether Chi's speech was purely out of personal employment disputes or rose to a level of "public concern" protected by the First Amendment. I find that Chi has sufficiently alleged a First Amendment discrimination claim against Mazur. Specifically, by speaking to outside individuals about there being a pattern of discrimination executed by Mazur in the Vegas PBS office, Chi's statements amounted to matters of public concern and, though the CCSD defendants are not precluded from arguing that these stemmed from personal grievances, the content of Chi's

28

message was not merely personal. Likewise, Chi has sufficiently alleged a claim against Mazur regarding "financial improprieties" that arose out of the hiring of expensive outside contractors. Although the claim of financial impropriety appears only loosely tethered to the factual record, at this stage of the litigation I cannot find that this speech, which Chi made to members outside the office, was not a matter of public concern. Although Chi's complaints about financial improprieties derived from her own job responsibilities, an accusation of financial impropriety by a public official exits the realm of merely a private, personal employment matter. Further, I disagree with the *CCSD* defendants that this statement could only have been made in Chi's official capacity. *See* ECF No. 42 at 8. They argue that because the hiring of the outside contractor removed duties previously under the purview of Chi's position, Chi was "discussing issues within the scope of her normal job duties." ECF No. 42 at 8 (citing *Garcetti*, 547 U.S. at 410) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ."). Nothing about Chi's public complaints about financial impropriety appears to have been a part of her job responsibilities, even if the complaints were related to them. Therefore, I find that Chi has sufficiently alleged that these statements were, in fact, made in her individual capacity. As to the first element of the qualified immunity question, I find that Chi has sufficiently alleged a constitutional violation. Because the defendants do not argue in their motion that this constitutional violation was not clearly established, I find that that, at this stage of the proceedings, Mazur is not entitled to qualified immunity. However, unlike with Mazur, Chi makes no specific allegations against Cole regarding her § 1983 First Amendment claims. Therefore, I find that she has not pled sufficient facts to support this claim and dismiss Claim 12 as to Cole in his individual capacity without prejudice and with leave to amend.

### 4.  *Section 1985(3) conspiracy claims (Claim 13)*

Under § 1985(3), a plaintiff must prove that there was a conspiracy to deprive her of her rights or privileges. *Branon v. Debus*, 289 F. App'x 181, 182 (9th Cir. 2008). To justify relief under §

1985(3), there "must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

CCSD defendants argue that Chi's remaining claims—against CCSD and SNPT, as well as Mazur and Cole in their individual capacities—fail because: (1) Chi cannot bring a § 1985 claim to redress violations that have their own remedial statutes (ADA, ADEA, and Title VII); (2) she has no factual support for her claim that there was a race-based or class-based conspiracy; (3) in order to raise a § 1985 claim, one must have a cognizable claim under § 1983, *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989), which Chi lacks; (4) Chi has not made any allegation that there was a meeting of the minds; and (5) Chi's claims under § 1985 fail pursuant to the intra-corporate conspiracy doctrine. ECF No. 22 at 17–20. Under the intra-corporate conspiracy doctrine, "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Id.* at 19 (quoting *DeCastro v. LV. Metro. Police Dep't*, 2024 WL 4189939, at *23 (D. Nev. Sept. 12, 2024)).

In response, Chi argues that the purpose of the alleged conspiracy was clear: she was a racial minority and a public employee and was targeted "in direct response to Ms. Chi petitioning outside governmental authorities for redress of her grievances." ECF No. 40 at 21 (citing ECF No. 1 at ¶¶ 230, 231, 239). Further, she argues that she sufficiently pled facts to support that the defendants intended to discriminate and retaliate against her because her complaints were ignored and met with disciplinary action. *Id.* at 22. The conspiracy itself, she states, is centered around Mazur, linking SNPT's money to actions by her and Cole and, by extension, CCSD. *Id.* at 23. In reply, the CCSD defendants emphasize that Chi has not sufficiently explained the distinction between the conspiracy and her Title VII, ADA, and ADEA claims. ECF No. 42 at 8–9.

Chi alleges that the conspiracy intended to deprive her of:

(a) her liberty interests under the fifth amendment and the fourteenth amendment to the United States Constitution and (b) her rights under the first amendment to the United States Constitution to free speech and to petition the government for redress of grievances, and (c) the equal protection of the laws, statutes, and constitution of the United States of America contrary to the fifth amendment and the fourteenth amendment to the United States Constitution, including her rights under federal statutes that include Title VII, the ADA, and the ADEA.

ECF No. 1 at ¶ 240. Regarding her conspiracy claims predicated on Title VII, ADA, and ADEA, Chi does not address the fact that case law is clear that a statute "cannot serve as a vehicle to enforce statutory rights when the statute in question has its own remedial structure." *Sauter v. State of Nevada*, 142 F.3d 445, at *1 (9th Cir. 1998) (ADEA and ADA); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (Title VII). Thus, the only conspiracy claims under § 1985 that can survive are Chi's liberty interest and her First Amendment claims. However, "to state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004).

Reviewing the facts alleged in the complaint, I cannot find any indication that Chi has sufficiently pled a conspiracy. Specifically, only conclusory facts support that there was ever an agreement between the parties. And, even then, these alleged facts do not meet the plausibility requirement. A plaintiff must show "an agreement or meeting of the minds to violate constitutional rights . . . ." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). In her complaint, Chi repeatedly accuses the defendants of conspiring, but cannot point to how or when this occurred, much less any agreement or meeting of the minds between them. *See* ECF No. 1 at ¶¶ 238–43. It is not enough to simply claim that the alleged parties to the conspiracy knew of each other, interacted in the course of their business, or communicated amongst themselves; establishing a claim for conspiracy requires a plaintiff to set out facts that the defendants reached an agreement or "meeting of the minds . . . ." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). No such facts in the complaint support a plausible claim that

CCSD, SNPT, or Mazur or Cole, in their individual capacities, agreed to restrict Chi's protected liberty interest or First Amendment rights. If anything, the complaint repeatedly accuses Mazur of acting independently in taking such actions. *See, e.g.*, ECF No. 1 at ¶ 156 ("It is believed that this was done at the request of, and at the behest of, Defendant Mazur, Mr. Turner, or someone acting under Defendant Mazur's instruction, recommendation, or direction."). Thus, I find that Chi has failed to sufficiently plead a conspiracy under § 1985(3) and therefore dismiss Claim 13 as to all defendants without prejudice and with leave to amend.

### 5. Tort claims

#### i. Discretionary-act immunity

CCSD defendants next argue that Chi's claims for IIED and negligent hiring are barred by discretionary-act immunity. ECF No. 22 at 20. Under Nevada law, a plaintiff may not bring a tort claim "Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies . . . or of any officer. . . , whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). The Supreme Court of Nevada

> adopted the *Berkovitz-Gaubert* test enunciated by the United States Supreme Court for determining whether acts fall within the scope of discretionary-act immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). To give rise to discretionary-act immunity, the act "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez*, 168 P.3d at 729. Additionally, *Martinez* provided that "decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id.* at 729.

*Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020) (citations simplified). "'[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.'" *Id.* (quoting *Vickers v. United States*, 228 F.3d 944 (9th Cir. 2000)).

1    CCSD defendants argue that Chi's negligent hiring claim is the same type of claim

2  rejected in *Paulos*, as well as in an order out of this district which stated that "decisions

3  regarding employee hiring, training, and supervision of its . . . workers is appropriately entitled

4  to discretionary immunity pursuant to NRS § 41.032." ECF No. 22 at 21 (quoting *Ansara v.*

5  *Maldonado*, 647 F. Supp. 3d 958, 982 (D. Nev. 2022)).

6    In response, regarding the negligent hiring claim against Mazur and CCSD (Claim 15),

7  Chi argues that "[t]here is evidence that Defendant Mazur previously engaged in financial

8  improprieties at another PBS affiliate" prior to being hired at Vegas PBS. ECF No. 40 at 26–27.

9  She points to case law involving negligent hiring in the context of private businesses. *Id.* at 27

10 (citing *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct.*, 520 P.3d 803, 811 (Nev. 2022) (giving no

11 indication that the employer in question was a public entity)). Nonetheless, she argues that

12 "[a]ny failure to investigate Defendant Mazur's history of prior employment at other PBS local

13 affiliates would not be an act of discretion. It would be an act of intentional misconduct and

14 wrongdoing and, therefore, not subject to immunity under NRS 41.032."

15    Chi cannot have it both ways. She claims negligence in the hiring of Mazur, but then

16 asserts that CCSD's alleged failure to investigate Mazur's past conduct is an intentional act and

17 done in bad faith. This is not a case of an intentional tort,[41] so it is only a sufficiently pled claim

18 of bad faith that would allow Chi's negligent hiring claim to overcome NRS 41.032. *See Franchise*

19 *Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014), *vacated and remanded on other grounds by Franchise*

20 *Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171 (2016) ("Discretionary-function immunity does not apply to

21 intentional and bad-faith tort claims."). Nothing in Chi's complaint or response credibly

22 supports the allegation that CCSD acted in bad faith by failing to look into Mazur's background.

23 As such, Nevada courts are clear that although a negligent hiring claim may exist in private

24 entities, public entities are generally shielded by NRS 41.032. *See Paulos*, 456 P.3d at 595. Chi

25 does nothing in her response to address this key distinction. I find that because the hiring of

26

---

[41] It is pled as *negligent* hiring. *Cf. infra* pp. 34–35 (discussing intentional torts and NRS 41.032).

1  Mazur was an act "relating to the hiring, training, and supervision of employees[,]" and because
2  Chi has failed to credibly allege bad faith, NRS 41.032 applies. Therefore, I dismiss Chi's Claim
3  15.[42] Because Chi could not credibly bring this claim and even amendment here would be futile, I
4  dismiss Chi's negligent hiring claim with prejudice.

5      As to her IIED claim (Claim 14), CCSD defendants argue that Chi's factual support
6  "stems entirely from personnel management actions arising out of Plaintiff's employment, and
7  involving independent discretion." *Id.* at 22. Specifically, all acts were taken within the "context
8  of Mazur's authority in her position[,]" including disciplining Chi, investigating Chi's workplace
9  conduct, "forming conclusions from those investigations[,]" and deciding to bar Chi from certain
10  events and locations. *Id.* (citing Compl., ECF No. 1 at ¶ 245). Chi argues in her response that
11  NRS 41.032 is inapplicable because "[u]nder Nevada law, 'discretionary-function immunity
12  under NRS 41.032 does not include intentional torts and bad-faith conduct'; therefore, 'a Nevada
13  government agency would not receive immunity under these circumstances.'" ECF No. 40 at 26
14  (quoting *Franchise Tax*, 335 P.3d at 139). In their reply, CCSD defendants assert that Chi fails to
15  allege that Mazur acted intentionally and in bad faith, and that her IIED claim is wholly based
16  on personnel-management actions involving independent discretion. ECF No. 42 at 12.

17      The law could not be clearer: in Nevada that both bad faith claims *and* intentional torts
18  claims are exempted from NRS 41.032. *See Franchise Tax*, 335 P.3d at 139 ("Discretionary-function
19  immunity does not apply to intentional and bad-faith tort claims."). Claim 14 for IIED is an
20  intentional tort claim. Therefore, the motion to dismiss, to the extent the CCSD defendants are
21  seeking dismissal of Claim 14 on the grounds of discretionary-act immunity, is denied.

22      *ii.    Sufficiency of the IIED claim*

23      CCSD defendants argue that even if CCSD and Mazur are not entitled to discretionary-
24  act immunity on the IIED claim (Claim 14), Chi has nonetheless failed to sufficiently plead the

25  _____
26  [42] Because I dismiss Claim 15 on discretionary-act immunity grounds, I do not address CCSD defendants' argument that the negligent hiring claim fails as a matter of law because of the Nevada worker's compensation process. *See* ECF No. 22 at 23–24.

claim because her complaint does not allege extreme and outrageous conduct. ECF No. 22 at 22–23. To state a claim for intentional infliction of emotional distress, a plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (quoting *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)). Under the first prong, the alleged conduct must fall "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009) (citing *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704–05 (D. Nev. 1986)). "'A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.'" *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (Cal. 1996)). "Personnel management consists of such actions as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts." *Id.* (citing *Janken*, 46 Cal. App. 4th at 64–65).

CCSD defendants argue that Chi's IIED claim "is entirely based on allegations regarding personnel-management actions" which include disciplining Chi, investigating Chi's workplace conduct, "acting in response to those investigations[,]" and deciding to bar Chi from certain events and locations. ECF No. 22 at 23 (citing Compl., ECF No. 1 at ¶ 245). With regard to the latter assertion, CCSD defendants point to *Welder*, where a court in this district found that an employee being barred from campus was "properly categorized as personnel management." *Id.* (citing *Welder*, 833 F. Supp. 2d at 1245). They also point to *Shelstad v. TGS Aviation Services*,

*Inc.*, where a court in this district found that an employee failed to sufficiently allege extreme and outrageous conduct even when he alleged he:

> (1) was accused of being intoxicated and instructed to go home; (2) was not provided a reasonable accommodation; (3) received a reduced work shift; (4) was subject to unspecified "disparaging comments" and "unprofessional bias;" (5) received disparate discipline; and (6) was terminated after refusing to sign an employee warning notice.

2017 WL 2870083, at *5 (D. Nev. July 5, 2017).

In response, Chi argues that the extreme and outrageous conduct arises out of the defendants' volume of actions: repeatedly disciplining Chi, including "outside the policies, procedures and protocols of" CCSD; repeatedly "claiming to believe allegations against Ms. Chi that had been asserted by Ms. Chi's white/Caucasian colleagues and peers, as well as white/Caucasian vendors and contractors and never, not even on one occasion, finding that Ms. Chi was innocent of the allegations against her"; "[r]epeatedly soliciting false allegations against Ms. Chi by Ms. Chi's white/Caucasian colleagues and peers, as well as white/Caucasian vendors and contractors"; and falsely accusing Chi of being a security threat. ECF No. 40 at 24 n.45 (quoting ECF No. 1 at ¶ 245). She then states that all of these actions resulted in severe emotional distress, including being placed on a heart monitor due to repeated panic attacks at work, developing a hearth arrhythmia and palpitations, and experiencing sudden onset vertigo. *Id.* at 25 (citing ECF No. 1 at ¶¶ 138, 247).

First, I do not agree that Chi has alleged such extreme and outrageous conduct. Although her allegations undoubtedly tell the story of an employee subjected to ongoing harassment by Mazur and CCSD, nothing she describes is more outrageous than the facts alleged in *Welder* or *Shelstad*. Chi relies on volume, noting that discipline was *repeated*, that Mazur *repeatedly* solicited false accusations against Chi, that defendants *repeatedly* "claimed to believe allegations" against Chi. ECF No. 1 at ¶ 245. But, for one, Chi's complaint does not allege repeated solicitation. Chi alleges that Mazur called Pat Breen into her office "in order to obtain negative information about Ms. Chi." ECF No. 1 at ¶ 51. Chi also alleges she filed a complaint in the EthicsPoint system that

Mazur was "exclusively hiring white/Caucasian vendors with the understanding that these well-compensated white/Caucasian vendors would lodge complaints against the non-white Ms. Chi[,]" but does not actually allege in her complaint that Mazur did this. *Id.* at ¶ 57. She alleges that she contacted the Chief Diversity Officer for the national PBS organization about Mazur "coaching employees to make false statements" but never specifies whether this happened with employees other than Breen. *Id.* at ¶ 79. Thus, the record does not support Chi's claim that there was a repeated pattern of soliciting false allegations against her. Further, there is nothing extreme or outrageous about Mazur and CCSD repeatedly "claiming to believe" allegedly false statements about Chi, even if they were untrue. I find that Chi has simply not alleged enough to sufficiently establish extreme and outrageous conduct. Therefore, Chi has failed to sufficiently support her IIED claim, and Claim 14 is dismissed in its entirety. Although seemingly futile, I dismiss without prejudice and with leave to amend.

### 6. *Chi's request for injunction (Claim 16)*

Defendants argue that Chi's claim for injunctive relief seeking to be reinstated is improperly pled because "injunctive relief is not an independent, free-standing cause of action." ECF No. 22 at 24 (quoting *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 996 (D. Nev. 2023), and citing *Bank of Am., N.A. v. Riverwalk Ranch Crossing Homeowners Ass'n*, 2017 WL 774908, at *4 (D. Nev. Feb. 28, 2017)). In response, Chi argues that injunctive relief—including reinstatement—is among the remedies available when an employer is found to have unlawfully engaged in employment discrimination in violation of Title VII. ECF No. 40 at 28–29.

There is no independent claim for injunctive relief. *See Bank of Am., N.A.*, 2017 WL 774908, at *4 ("[T]he court follows the well-settled rule in that a claim for 'injunctive relief' standing alone is not a cause of action."); *In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012). It appears that Chi seeks reinstatement—an equitable form of relief—as one of her remedies, along with damages. *See* ECF No. 40 at 28–29 ("While it is true that there is no stand-

alone cause of action for injunctive relief, an order of reinstatement is a remedy available for Title VII violations that is separate and distinct from monetary damages. Because of these separate remedies, Ms. Chi pled two separate claims for race discrimination under Title VII."). Chi's two claims of race discrimination are duplicative, and, unless she is precluded by some other statutory or common law rule, she may seek both damages and equitable relief under the same race discrimination claim. Therefore, Chi's Claim 16 is dismissed with prejudice and without leave to amend.

### B. SNPT's motion to dismiss (ECF No. 24)

SNPT, which is only named in Claim 13, argues that Chi failed to sufficiently plead her § 1985(3) claim and, separately, that Chi's claim against it is barred by the statute of limitations. *See* ECF No. 24 at 5–10. Because I find that dismissal of Claim 13 in its entirety is warranted based on the CCSD defendants' motion, the dismissal includes the claim against SNPT. Therefore, I deny SNPT's motion as moot.

## IV. Conclusion

IT IS THEREFORE ORDERED that the CCSD defendants' motion to dismiss **[ECF No. 22] is GRANTED in part and DENIED in part** as follows:

a. CCSD defendants' motion to dismiss as to Claim 2 is **GRANTED** and Chi's Claim 2 is dismissed without prejudice.

b. CCSD defendants' motion to dismiss as to Chi's Claims 9 through 13 against the individual defendants in their official capacities is **GRANTED.**

c. CCSD defendants' motion to dismiss as to Chi's Claim 11 is **GRANTED** and Chi's Claim 11 is dismissed without prejudice in its entirety.

d. CCSD defendants' motion to dismiss as to Chi's Claim 12 is **GRANTED** as to Cole in his individual capacity and **DENIED** as to Mazur in her individual capacity. Therefore, Chi's Claim 12 as to Cole is dismissed without prejudice.

e.   CCSD defendants' motion to dismiss as to Chi's Claim 13 is **GRANTED** and Chi's Claim 13 is dismissed without prejudice in its entirety.

f.   CCSD defendants' motion to dismiss as to Chi's Claim 14 is **GRANTED** and Chi's Claim 14 is dismissed without prejudice in its entirety.

g.   CCSD defendants' motion to dismiss as to Chi's Claim 15 is **GRANTED** and Chi's Claim 15 is dismissed with prejudice in its entirety.

h.   CCSD defendants' motion to dismiss as to Chi's Claim 16 is **GRANTED** and Chi's Claim 16 is dismissed with prejudice in its entirety.

IT IS FURTHER ORDERED that SNPT's joinder **[ECF No. 23] is GRANTED**, but its motion to dismiss **[ECF No. 24] is DENIED as moot.**

Dated: August 5, 2025

_____
Cristina D. Silva
United States District Judge